IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| JASON GRIEGO and JAMES SANCHEZ, | ) ) ) | CIVIL NO. 15-00122 SOM-KJM |
|---|---|---|
| Plaintiffs, | ) ) | **ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER AND DENYING PLAINTIFFS' REQUESTS TO SUPPRESS EVIDENCE, FOR AN EVIDENTIARY HEARING, FOR DISCOVERY SANCTIONS, AND TO COMPEL DISCOVERY** |
| vs. | ) ) | |
| COUNTY OF MAUI; ANSELM YAZAKI; ALY MIYASHIRO; MYLES S. WON; DOE OFFICERS 2-15, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER AND DENYING PLAINTIFFS' REQUESTS TO SUPPRESS EVIDENCE, FOR AN EVIDENTIARY HEARING, FOR DISCOVERY SANCTIONS, AND TO COMPEL DISCOVERY**

I.     INTRODUCTION.

Defendants County of Maui, Anselm Yazaki, Aly Miyashiro, and Myles Won seek reconsideration of the order this court entered on March 29, 2017, granting in part and denying in part Defendants' Motion for Summary Judgment.  Defendants assert but do not establish that their recent discovery of additional material warrants reconsideration of the order.  This court denies the reconsideration motion.

In their opposition papers, Plaintiffs Jason Griego and James Sanchez request an evidentiary hearing and ask this court to "suppress" the newly discovered evidence.  This court will not apply "suppression" analyses applicable in criminal

1

procedure to this civil case and therefore denies the request for "suppression" of evidence and for an evidentiary hearing in relation to the purported suppression motion. Plaintiffs' opposition papers also appear to include requests to compel discovery and for discovery sanctions. Those requests are denied.

**II.     BACKGROUND.**

David Maniatis told police that two men had threatened him at his home in Wailea, Maui, on July 14, 2013. After speaking with Maniatis and several of his employees, Maui Police Department officers arrested Griego and Sanchez for Burglary in the First Degree. The officers also searched Griego's and Sanchez's hotel rooms for weapons. Griego and Sanchez were booked but ultimately released without charge.

Griego and Sanchez filed the present lawsuit against the County and three individual police officers, asserting claims under 42 U.S.C. § 1983 based on alleged violations of the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution, as well as state claims of false imprisonment or false arrest, intentional infliction of emotional distress, and negligence. Defendants sought summary judgment on all claims.

On March 29, 2017, this court granted summary judgment to Defendant County of Maui on all § 1983 claims. *See Griego v. Cty. of Maui*, Civ. No. 15-00122, 2017 WL 1173912, at *24 (D. Haw. March 29, 2017). With respect to the § 1983 claims against the individual Defendants, this court granted summary judgment on the claims relating to alleged violations of the Fifth, Eighth, and Ninth Amendments, as well as with respect to any alleged violation of the Fourth Amendment relating to the fact of arrest. *Id.* The court denied summary judgment with respect to § 1983 claims relating to alleged Fourth Amendment violations concerning the manner of arrest and the searches for guns. *Id.*

This court also granted summary judgment to all Defendants on the state law claims of false imprisonment/false arrest, and to the County on the negligent training/supervision/discipline claim. *Id.* With respect to the claim of negligence against the individual Defendants and the claim of respondeat superior liability on the part of the County, summary judgment was denied to the extent those claims related to the manner of arrest and the gun searches. *Id.* In all other respects, summary judgment was granted on the negligence and respondeat superior claims. *Id.* Finally, summary judgment was denied with respect to any intentional infliction of emotional distress claim relating to any matter

remaining for further adjudication, but granted with respect to any alleged emotional distress growing out of alleged wrongdoing on which the court granted summary judgment to Defendants. *Id.*

Summary judgment as to claims relating to the gun searches was denied given genuine issues of material fact. *Id.* at *19-23. While the Maui Police Department officers maintained that Griego and Sanchez had consented to the searches, Griego and Sanchez denied that they had consented. *Id.* at *19-21. This court was unable to determine what had actually occurred in the hotel rooms during the gun searches. *Id.* at *21. Qualified immunity in relation to the § 1983 claim relating to the gun searches was also denied; this court noted that, "given the uncertainty as to what the officers did, the court cannot possibly say whether the acts the officers took did or did not violate a constitutional right." *Id.*

Defendants seek reconsideration of a portion of the order filed on March 29, 2017, arguing that newly discovered evidence reveals that Sanchez's claim that his Fourth Amendment rights were violated by the gun search is "based on misrepresentations" to this court. ECF No. 173-1, PageID # 1239. Defendants say the additional evidence shows that Sanchez lied and committed perjury, which warrants a

reversal of this court's ruling as to the claims concerning the gun searches. ECF No. 181, PageID # 1327.

According to defense counsel, the new evidence was discovered after the summary judgment order issued. On May 1, 2017, as defense counsel was preparing for what was then the upcoming trial, defense counsel learned that now-retired Detective Myrna Sabas-Ryder had recorded some of her conversations with Griego and Sanchez "for report writing purposes." ECF No. 173-3, PageID # 1245; ECF No. 173-2, PageID # 1240-41. According to Detective Sabas-Ryder, she typically deleted recordings after writing the part of the report addressing the conversations. ECF No. 173-2, PageID # 1241. She says she therefore did not turn in any recordings with her report. *Id*. Nor did she turn in any recordings relating to Griego's or Sanchez's inquiries as to the status of their case. *Id.* In her view, those inquiries did not relate directly to the substance of the investigation. *Id.* Detective Sabas-Ryder believed that, when she retired in 2015, she had turned in all work-related material and equipment. *Id.*

At a meeting on May 1, 2017, Detective Sabas-Ryder told defense counsel that she was "not sure" she had any recordings and that the recordings "may not exist." *See* ECF No. 173-3, PageID # 1246; *see also* ECF No. 173-2, PageID # 1241.

5

Defense counsel nevertheless asked Detective Sabas-Ryder to look at home for any recordings. The detective then found two recorded conversations with Sanchez that were "still saved on a jump drive." ECF No. 173-2, PageID #s 1241-42. According to Detective Sabas-Ryder, neither recording had been submitted with her report. *Id.*, PageID # 1242.

Counsel says that, before learning of the recordings, she had followed her "normal protocol" of submitting a request to the Chief of Police requesting all records relating to the case. ECF No. 173-3, PageID #s 1243-44. The Records Section of the Maui Police Department provided all relevant materials; no audio or video recordings were included. *Id.*, PageID # 1243-45. Defense counsel notes that this was not unusual because recordings are generally only attached to police reports if the case involves the use of lethal force by an officer. *Id.*, PageID # 1244.

Defense counsel did not ask Detective Sabas-Ryder for any recordings before May 1, 2017, because "it never occurred" to counsel that Detective Sabas-Ryder would have anything related to this case. *Id.*, PageID # 1246. "All case-related materials should have been submitted to the Records Section at MPD." *Id.* Defense counsel had "never asked a police officer directly for any materials because all reports and evidence are

[generally] sent to the Records section." *Id.*, PageID #s 1243-44. According to defense counsel, only during an ongoing active investigation might a police officer, rather than the Records Section, be holding the report and any relevant evidence. *Id.*, PageID# 1244. Once an investigation concluded, all reports and evidence should have been sent to the Records Section. *Id.*

On the afternoon of May 1, 2017, now-retired Detective Sabas-Ryder left a copy of the two recorded conversations at defense counsel's office. ECF No. 173-2, PageID #s 1242. On May 3, 2017, defense counsel listened to the recordings and contacted counsel for Griego and Sanchez. ECF No. 173-3, PageID # 1247. Defense counsel sent a copy of the recordings to Plaintiffs' counsel, had the recordings transcribed, and sent a transcript to Plaintiffs' counsel. *Id.*

In one recorded conversation between Detective Sabas-Ryder and Sanchez, Sanchez refers to having consented to the search of his hotel room. *See* ECF No. 173-4, PageID # 1250.

> DETECTIVE SABAS: You didn't -- you didn't have it on your person?
>
> CHIEF SANCHEZ: No, absolutely not. And besides that, I'm protected under HR[S] 2 -- 218 if I had one, but the fact is I didn't have one. And I gave consent to search my room and I -- I wasn't in possession of a firearm. And you could check the travel logs --

*Id.* While clarifying whether he had been carrying a gun on the night of the alleged incident with Maniatis, Sanchez again told Detective Sabas-Ryder, "I asked them to search my room." *Id.*, PageID #1251.

In a declaration, Sanchez confirms that he telephoned Detective Sabas-Ryder on July 24, 2013. ECF No. 180-4, PageID # 1293. He says the purpose of the call was to get a status update about the investigation and to learn if any charges would be brought against him. *Id.*, PageID #s 1293-94. According to Sanchez, he also called to ask why his minor son had been left unattended after his arrest and why his son had been physically removed by hotel employees from his hotel room. *Id*. Sanchez further states,

> Although I apparently stated that I "consented" to the search of my hotel room in my telephone conversation with Officer Sabas-Ryder, to the best of my recollection on the evening that I was arrested I never was asked by any police officer for permission to search my hotel room, and I never actually consented to any search of my hotel room and belongings.

*Id.*, PageID # 1294.

Defendants assert that, in light of the new evidence, Sanchez's claims associated with the search for guns must be dismissed to prevent manifest injustice. ECF No. 173-1, PageID # 1236; *see also* ECF No. 181, PageID # 1330.

8

**III.     RECONSIDERATION STANDARD.**

The summary judgment order is an interlocutory order governed by Local Rule 60.1. *See Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79-90 (9th Cir. 1979) ("[A]n order denying a motion for summary judgment is generally interlocutory and subject to reconsideration by the court at any time" (quotation marks and citation omitted)). Under Local Rule 60.1, a reconsideration motion may be based on "(a) Discovery of new material facts not previously available; (b) Intervening change in law; and (c) Manifest error of law or fact."

"Mere disagreement with a previous order is an insufficient basis for reconsideration." *White v. Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Id.* (quoting *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

**IV.     ANALYSIS.**

   **A.  Defendants' Motion for Reconsideration Based on Newly Discovered Evidence Is Denied.**

Defendants seek reconsideration of an interlocutory order based on newly discovered evidence. That is, Defendants seek reconsideration of an order that, at the time it was entered, left other claims for further adjudication. "To

support a motion for reconsideration based upon newly discovered evidence, the movant is obliged to show not only that the evidence was newly discovered or unknown, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Oyama v. Univ. of Haw.*, Civ. No. 12-00137 HG-BMK, 2013 WL 3296567, at *2 (D. Haw. June 28, 2013); *accord Hagan v. U.S. Nat'l Bank*, Civ. No. 14-00215 DKW-KSC, 2014 WL 5465321, at *2 (D. Haw. Oct. 27, 2014). "The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" *Sch. Dis. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Defendants show that the "new evidence"--the recorded conversation between Detective Sabas-Ryder and Sanchez dated July 24, 2013--was unknown to them before the summary judgment hearing. The existence of the recording was not discovered and not in Defendants' possession until May 1, 2017, over a month after the summary judgment order had been filed. Detective Sabas-Ryder believed that she had turned over all materials and reports to the police department when she retired in 2015, and all materials and reports held in the Records Section were given directly to defense counsel. The recording was not part of what

was turned over; therefore, counsel did not have the recording at the time of the summary judgment hearing.

Defense counsel explains that the normal protocol for requesting discovery materials from the Maui Police Department does not include interviewing individual detectives or officers, especially when the underlying case was not prosecuted. Audio or video recordings are not usually attached to police reports or held in the Records Section, except in cases involving the use of lethal force by an officer. Upon being pressed by counsel to look for any remaining recordings at home, Detective Sabas-Ryder found two recorded conversations on a "jump drive" at her house.

This court can easily understand how it happened that the evidence was not discovered earlier. Detective Sabas-Ryder had retired and was not named as an individual defendant in the Second Amended Complaint. The recording was on a "jump drive" at her house, not in the Records Section, and even Detective Sabas-Ryder was apparently unaware she had it.

But even if the recording was newly discovered, it does not warrant reconsideration. The newly discovered evidence goes to Sanchez's credibility with respect to whether or not he consented to a search for guns in his hotel room. Sanchez has maintained under penalty of perjury that he did not give

11

consent. Although he concedes that he told Detective Sabas-Ryder during their telephone conversation on July 24, 2013, that he "consented" to a search for guns, that telephone conversation was not under oath. Sanchez says, "[T]o the best of my recollection on the evening that I was arrested I never was asked by any police officer for permission to search my hotel room, and I never actually consented to any search of my hotel room and belongings." ECF No. 180-4, PageID # 1294.

Defendants argue that Sanchez's claims "are based on misrepresentations to this Court" and that he "should not be permitted to benefit from [his] deceit." ECF No. 173-1, PageID # 1239. However, in considering a motion for summary judgment, a court must not weigh the evidence, make credibility determinations, or draw inferences from the facts adverse to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1149 (9th Cir. 2002) ("[O]f course, it is for the trier-of-fact, not the court deciding whether to grant summary judgment, to determine issues of credibility."). The recording may well be critical at trial, but the issue of Sanchez's credibility is best left for a jury to decide.

While the recorded conversation is probative of whether Sanchez consented to a gun search on July 14, 2013, it

12

does not by itself conclusively establish what actually happened at Sanchez's hotel room. The record is not so "one-sided" that Defendants must prevail as a matter of law on all of Sanchez's claims relating to the search for guns. *See Anderson*, 477 U.S. at 251-52. Viewed in the light most favorable to Sanchez, the record does not establish that there are no genuine issues of material fact as to whether Sanchez consented to a search for guns. The recorded conversation does not alter this court's conclusion that summary judgment may not be awarded with respect to the search for Sanchez's guns. Notably, although the reconsideration motion refers to "Plaintiffs," the recording appears to relate only to Sanchez, not to both Sanchez and Griego. Reconsideration of this court's summary judgment order is denied.

        **B.    The Request for an Evidentiary Hearing Is Denied.**

Griego and Sanchez ask this court to "suppress" the newly discovered evidence. "Suppression" is typically a remedy in criminal cases. The Federal Rules of Criminal Procedure do not apply to civil cases. *See* Fed. R. Crim. P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in the United States district courts . . . ."). Griego and Sanchez do not explain why "suppression" applies in this civil case.

13

Before this court is Defendants' motion for reconsideration of this court's order granting in part and denying in part Defendants' motion for summary judgment. This court has applied the civil standards and procedures for a motion for summary judgment and motion for reconsideration.

Moreover, an opposition memorandum is not usually an appropriate vehicle for a new motion. The regular briefing protocol for a motion would be undermined if a new motion (other than a mirror-image motion such as a cross- or counter-motion) were countenanced if mentioned in an opposition memorandum. The party responding to the new motion would be limited to addressing the new motion in a reply memorandum supporting the original motion. A reply memorandum is subject to a more limited word limit and response time than the ordinary opposition memorandum. Therefore, even putting aside the inapplicability of "suppression" to this civil case, this court does not convert the "suppression" motion into a motion to exclude any evidence at trial.

To the extent that Griego and Sanchez believe further discovery is warranted, they may raise that matter with the Magistrate Judge.

### C. To the Extent Griego and Sanchez Seek Discovery Sanctions and an Order Compelling Discovery, Those Requests Are Denied.

To the extent Griego and Sanchez ask in their opposition for an order compelling discovery and/or for discovery sanctions, that request should be made in a separate motion. Under Local Rule 7.4, any such motion would follow the orderly briefing schedule of a motion, opposition, and a reply. This court also observes that discovery motions are generally handled by Magistrate Judges, not District Judges. The request to compel discovery and/or for discovery sanctions is denied, but Griego and Sanchez may file separate motions seeking an extension of the discovery cutoff and discovery sanctions. This court is not here indicating whether the Magistrate Judge should grant or deny any such motion.

### V. CONCLUSION.

This court denies Defendants' motion for reconsideration of this court's order of March 29, 2017. The requests to suppress evidence and for an evidentiary hearing are also denied. To the extent Plaintiffs' opposition includes requests to compel discovery and for discovery sanctions, those requests are denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 6, 2017.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

*Jason Griego and James Sanchez v. County of Maui; Anselm Yazaki; Aly Miyashiro; Myles S. Won; Doe Officers 2-15*, Civ. No. 15-00122 SOM-KJM, ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER AND DENYING PLAINTIFFS' REQUESTS TO SUPPRESS EVIDENCE, FOR AN EVIDENTIARY HEARING, FOR DISCOVERY SANCTIONS, AND TO COMPEL DISCOVERY.